DAVID LOPEZ, ESQ. DL6779
Attorney for Plaintiff
171 Edge of Woods Road
P.O. Box 323
Southampton, New York 11969-0323
Tel:	631.287.5520
Fax:	631.283.4735
e-Mail:	DavidLopezEsq@aol.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBORAH DONOGHUE,

            Plaintiff,

- against -

FINISH LINE INC.,

            Nominal Defendant,

MONECOR (LONDON) LIMITED
(TRADING AS ETX CAPITAL),

            Defendant.

Case No. 17-cv-8708

COMPLAINT FOR RECOVERY OF
SHORT-SWING PROFITS
UNDER 15 U.S.C. 78p(b)

Jury Trial Demanded

DEBORAH DONOGHUE, by David Lopez, Esq., her attorney, complaining of the defendants, respectfully alleges the following upon information and belief, except as to paragraph 2, which plaintiff alleges on personal knowledge:

1

## JURISDICTION:

1. This action arises under the provisions of Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Act"), 15 U.S.C. Section 78p(b), and jurisdiction is conferred upon this court by Section 27 of the Act, 15 U.S.C. Section 78aa.

## THE PARTIES:

2. Plaintiff is a security owner of FINISH LINE INC. ("FINISH LINE"), an Indiana Corporation with principal offices at 3308 N. Mitthoeffer Road, Indianapolis, Indiana 46235.

3. At all times relevant the Class A Common Stock of FINISH LINE was registered under Section 12(b) of the Act and was and is traded on The NASDAQ Stock Market LLC, a National Securities Exchange located within this district. One or more subject transactions took place upon that Exchange.

4. This action is brought in the right and for the benefit of FINISH LINE which is named as a nominal party defendant solely in order to have all necessary parties before the court.

5. At all times relevant MONECOR (LONDON) LIMITED (TRADING AS ETX CAPITAL) ("MONECOR") was and is a company registered in England and Wales with principal offices at One Broadgate, London EC2M 2QS, United Kingdom.

6. From on or about May 19, 2017, MONECOR has been a statutory Insider of FINISH LINE, to wit: a more-than-10% beneficial owner of a class of equity security through direct ownership of Class A Common Stock and/or through ownership of derivative securities convertible within sixty days into Class A Common Stock. Failure by MONECOR to file any Forms 3, 4 and/or 5 with the Securities & Exchange Commission as required by Section 16(a) of the Act, 15 USC 78p(a) timely reporting its FINISH LINE Class A Common Stock purchases sales and holdings and its derivative positions makes it impossible for plaintiff to state with certainty the date of entry of MONECOR into 10% beneficial ownership, facts which will need to be established through discovery.

7. Venue is correct in this district as the National Securities Exchange upon which one or more subject transactions took place is headquartered within the district. Additionally, MONECOR is a non-resident alien in relation to the United States of America. Venue is proper as to MONECOR in any district under 28 U.S.C. 1391(d).

**STATUTORY REQUISITES:**

8. The violations of Section 16(b) of the Act to be described herein involve non-exempt securities in non-exempt transactions engaged in by a non-exempt person within the meaning of the Act.

9. Demand for prosecution was made by plaintiff on FINISH LINE on September 9, 2017. The 60-day waiting period mandated by the statute has

expired without a recovery having been secured by FINISH LINE through self-help. Further delay in the filing of suit would be a futile gesture.

10. This action is brought within two years of the occurrence of the violations to be described herein.

### FIRST CLAIM FOR RELIEF:

11. The principal business of MONECOR, in its own words as used in a Schedule 13D dated September 8, 2017, and filed with the Securities & Exchange Commission, "is providing institutional, high-net-worth and retail customers with multi-asset market derivatives trading through financial spread betting and contract for difference products."

12. MONECOR, beginning on or about March 30, 2017, became the issuing counterparty on Contracts For Difference ("CFDs") purchased by a client, SPORTS DIRECT INTERNATIONAL PLC, ("SPORTS DIRECT") a United Kingdom corporation with offices at Unit A, Brook Park East, Shirebrook NG2O 8RY, United Kingdom.

13. Each such CFD provided that MONECOR and SPORT DIRECT would or will exchange at closure the difference in the value of underlying Shares of Class A Common Stock of FINISH LINE at the time at which the contract was agreed and at the time at which it was or is closed.

14. In order to hedge its exposure under the CFDs, MONECOR purchased and sold shares of Class A Common Stock of FINISH LINE for its own

account and risk on the dates, in the quantities and at the prices shown at Exhibit 1 hereto. MONECOR, at all times it owned such shares, retained the power to buy, to hold, to sell and to vote them.

15. Such trading activity by MONECOR continued on and after its becoming a statutory insider of FINISH LINE giving rise to some of the short-swing profits which this suit seeks to recover for FINISH LINE's benefit.

16. The amounts of such profits are unknown to Plaintiff pending discovery but are estimated to approximate $1,700,000. A non-binding computation of damages based upon Plaintiff's present state of knowledge of the facts of MONECOR's trading appears at Exhibit 2 hereto

17. Such profits are recoverable on behalf of FINISH LINE by Plaintiff as one of its shareholders, management having failed to act in its own right and for FINISH LINE's own benefit in a timely manner.

## SECOND CLAIM FOR RELIEF

18. MONECOR, beginning on or about June 16, 2017, was the purchaser of put options sold by SPORTS DIRECT, or became a party to CFDs relating to exchange-traded put options on FINISH LINE Class A Common Stock ("Put CFDs), in either case providing MONECOR with the economic rights associated with equivalent FINISH LINE put options granting MONECOR the right to sell the numbers of shares of FINISH LINE Class A Common Stock at the referenced exercise prices (i.e. "strike" prices) on or before the expiration dates of the puts or Put CFDs. The dates and terms of

the FINISH LINE puts purchased from, or the Put CFDs entered into with, SPORTS DIRECT are summarized at Exhibit 3 hereto.

19. For purposes of Section 16(b) and under SEC Rules, MONECOR's purchases of FINISH LINE put options or Put CFDs from SPORTS DIRECT on each of the put transaction dates enumerated at Exhibit 3 are deemed equivalent to sales by MONECOR, on each of the put transaction dates, of the number of shares of FINISH LINE common stock underlying the puts or referenced by the Put CFDs sold or entered into by MONECOR.

20. Additionally, in order to hedge its exposure under the puts or Put CFDs purchased from or entered into with SPORTS DIRECT, MONECOR sold exchange traded put options on FINISH LINE Class A Common Stock. The put options were sold by MONECOR on or about the same dates and on the same terms as the put or Put CFD transactions indicated at Exhibit 3. Each exchange-traded put option sold by MONECCOR obligated MONECOR to purchase the number of shares of FINISH LINE Class A Common Stock underlying each such put option at the same indicated exercise prices on or before the same expiration dates associated with the corresponding equivalent put options or Put CFDs purchased from SPORTS DIRECT.

21. For purposes of Section 16(b) and under SEC Rules, MONECOR's sales of exchange-traded FINISH LINE put options as hedges against the substantially similar put options or Put CFDs contemporaneously purchased from or established with SPORTS DIRECT are equivalent to and deemed to be purchases by MONECOR of the

number of shares of FINISH LINE Class A Common Stock underlying the puts sold on each such date.

22. MONECOR's purchases of puts or economically equivalent Put CFDs from SPORTS DIRECT may be matched as Section 16(b) "sales" of the number of shares of underlying or referenced FINISH LINE Class A Common Stock indicated on each of the dates listed at Exhibit 3, against MONECOR's sales of exchange-traded puts, each of which is a deemed Section 16(b) "purchase" of the same number of underlying FINISH LINE Class A Common Stock on the same date. All such purchases and sales of put options (equivalent and deemed to be, respectively, statutory sales and purchases of underlying Class A Common Stock) which continued on and after MONECOR became a statutory insider of FINISH LINE, may be matched under the 'lowest-in, highest-out" method universally recognized in the jurisprudence as the means of determining recoverable profits. Those profits may be calculated by reference to the market trading price of the underlying FINISH LINE common stock on the dates of the deemed purchases and sales in accordance with SEC Rule 16(b)-6(c)(2). The amounts of such profits are unknown to Plaintiff pending the conduct of discovery but are estimated to exceed $4,000,000. A non-binding computation appears at Exhibit 3.

23. Certain exchange-traded FINISH LINE puts sold by MONECOR as part of its hedging activity which have an exercise price of $12 per share (and which correspond to puts or economically equivalent Put CFDs purchased by MONECOR in separate transactions with SPORTS DIRECT covering the same number of shares, on or about the same dates and providing the same terms, as indicated at Exhibit 3) will not expire until on or about November 17, 2017, and February 16, 2018. To the extent the

closing trading price of the underlying FINISH LINE Class A Common Stock on either expiration date is higher than $12 per share and MONECOR's exchange-traded put counterparties do not exercise their put options, or in the event that any of these outstanding exchange-traded put options sold by MONECOR are canceled prior to expiration, short-swing profits may be additionally or separately recoverable up to the amount of any premium received by MONECOR in connection with the sale of the exchange-traded put options, under SEC Rule 16b-6(d). The amount of premium received constituting potentially recoverable short-swing profits has not been disclosed by MONECOR and cannot be estimated pending the conduct of discovery.

24. All profits described in this Second Claim for Relief are recoverable on behalf of FINISH LINE by Plaintiff as one of its shareholders, management having failed to act in its own right for FINISH LINE's own benefit in a timely manner.

### THIRD CLAIM FOR RELIEF:

25. This Third Claim For Relief is a precaution against probable errors and omissions of detail attributable to inadequacies or inaccuracies in the public record or the discovery of additional trades during the course of this action.

26. MONECOR, acting during periods not barred by the statute of limitations measured from the date of the filing of this complaint, purchased and sold or sold and purchased equity securities or equity security equivalents of FINISH LINE, including those described in the First and Second Claims For Relief, within

periods of less than six months of each other while a beneficial owner of more than 10% of a class of equity security and a fiduciary of FINISH LINE.

27. By reason of such purchases and sales or sales and purchases of its equity securities or equity security equivalents within periods of less than six months of one another while an insider and fiduciary of FINISH LINE, MONECOR realized profits, the exact amounts thereof being unknown to Plaintiff, which profits inure to the benefit, and are recoverable by plaintiff on behalf, of FINISH LINE.

**WHEREFORE**, Plaintff demands judgment:

a) Requiring MONECOR to account for and to pay over to FINISH LINE the short-swing profits realized and retained by it in violation of Section 16(b) of the Act, together with appropriate interest and the costs of this suit;

b) Awarding to Plaintiff her costs and disbursements including reasonable attorney's, accountants and expert witness fees; and

c) Granting to Plaintiff such other and further relief as the court may deem just and proper.

Dated: Southampton, New York
November 9, 2017

Yours, etc.

_____
David Lopez, Esq. (DL-6779)